UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
CASE NO. 12-539-TSB-JGW

TONYA WINANS                                             PLAINTIFF

v.

COMMISSIONER OF SOCIAL SECURITY              DEFENDANT


REPORT AND RECOMMENDATIONS

This is a Social Security appeal filed by plaintiff, through counsel, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Two issues are presented: (1) whether the administrative law judge ("ALJ") properly considered all of plaintiff's impairments and limitations; and (2) whether the ALJ gave proper weight to the medical opinions. Doc. 16 at 12-13.

**I.**

Plaintiff Tonya Winans, forty-six years old, with a ninth grade education and work experience as a press operator, fork lift operator, and recruiter, filed an application for disability insurance benefits ("DIB") on October 14, 2008, followed by an application for supplemental security income ("SSI") on November 10, 2008. (Administrative Transcript ("Tr.") 23, 215-216, 220, 173-178). In both applications she alleged a disability onset date of May 24, 2007, the day after her fortieth birthday, owing to clubbed feet, low back pain, knee pain, and depression. (Tr. 210, 215). After her claims were denied initially and upon reconsideration, (Tr. 98-113, 117-130), plaintiff requested a hearing *de novo* before an ALJ (Tr. 131-132). On November 19, 2010, an evidentiary hearing was held by ALJ Samuel Rodner, at which plaintiff, represented by counsel, Matthew Brownfield, and a vocational expert, William Kiger, testified. (Tr. 45).

On January 13, 2011, the ALJ entered his decision denying plaintiff's claims. (Tr. 23-37). When the Appeals Council summarily denied plaintiff's request for review on May 22, 2012, the ALJ's decision became defendant's final determination. (Tr. 1-5).

The ALJ's "Findings of Fact and Conclusions of Law," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act on March 31, 2012.

2. The claimant has not engaged in substantial gainful activity since May 24, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: low back pain, history of multiple surgeries for bilateral clubbed feet, bilateral knees, and bilateral ankles, morbid obesity, bipolar affective disorder, and panic disorder without agoraphobia (20 CFR 404.1520(c) and 416.920(c)).

   ……………………..

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

   ………………………

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: she can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of at least 4 hours in an 8-hour workday, no more than 20 minutes at a time without breaks, and sit for about 6 hours in an 8-hour workday and must periodically alternate sitting and standing to relieve pain or discomfort. She can occasionally climb ramps or stairs and stoop, and she can never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl. She must avoid concentrated exposure to hazardous machinery and heights. Mentally, the claimant is capable of moderately complex tasks with only superficial interactions with coworkers and supervisors, and no responsibility to deal with the public in a setting that is not fast paced and does not have strict time or production requirements.
   ………………………..

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

…………………………

7.     The claimant was born on May 23, 1967 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

…………………………

11.     The claimant has not been under a disability, as defined in the Social Security Act, from May 24, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 26-37).

On appeal to this Court, plaintiff argues that the ALJ did not properly considered all of her impairments and limitations and failed to give proper weight to the medical experts. Doc. 16 at 12-13. Each argument will be address in turn.

**II.**

On a Social Security appeal, the Court is to determine whether the ALJ's non-disability finding is supported by substantial evidence and ensure no error of law was committed. 42 U.S.C. §§ 405(g), 1382(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the

Court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the SSA asks if the claimant is still performing substantial gainful activity; at Step 2, the SSA determines if one or more of the claimant's impairments are "severe;" at Step 3, the SSA analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the SSA determines whether or not the claimant can still perform his or her past relevant work; and finally, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. 20 CFR §§ 404.1520, 416.920; *Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

The plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. §§ 404.1512(a), 416.912(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months,

4

that left her unable to perform any job in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 1382(c).

## III.

The ALJ determined that plaintiff had several impairments, including chronic low back pain, bilateral clubbed feet, knee pain, ankle pain, morbid obesity, bipolar disorder, and PTSD. (TR. 28-29). While the ALJ did find that her impairments were "severe" and significantly interfered with her ability to work, he did not believe they met or equaled a listed impairment, either individually or in combination. (Tr. 29). The ALJ considered Listings 1.04 (spine disorders), 1.02 (major dysfunction of a joint), and 12.06 (mental impairments), but found each lacking. *Id.* He ultimately found that plaintiff had the RFC to perform a restricted version of sedentary work. (Tr. 30).

The ALJ considered plaintiff's main impairments to be her clubbed feet, for which she had more than twenty surgeries over the years, back pain, and various mental impairments for which she was prescribed multiple medications. (Tr. 31-32). While the ALJ did find that plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," he did not believe the objective medical evidence supported her statements regarding the intensity, persistence, and limiting effects of her symptoms. In this vein, the ALJ pointed to several inconsistencies between plaintiff's reported symptoms and those described by her medical reports. For example: while plaintiff complained of disability due to back pain, a treatment note (Tr. 667) on March 16, 2010, stated that she had not been treated for it for some six months (Tr. 32); though plaintiff complained of bowel and bladder issues, she denied having them during an emergency room treatment on June 16, 2010 (Tr. 760); and although plaintiff

5

alleged she always had joint effusion in her left ankle, only one report found that to be the case (Tr. 426).

In addition, the ALJ found plaintiff not entirely credible. (Tr. 33). Plaintiff was noncompliant with mental health appointments and possibly with her medications, which the ALJ cited as undercutting her allegations regarding the severity of her mental impairments. *Id*. The ALJ also pointed to treatment notes showing plaintiff's mental condition as "very stable" (Tr. 723), with plaintiff herself stating that her medicine was working (Tr. 744). Moreover, the ALJ believed plaintiff tended to exaggerate the severity of her impairments. (Tr. 33-34). Finally, the ALJ noted that plaintiff's earning records show periods of very low earnings prior to her alleged onset date, which the ALJ believed militated against finding that it was solely due to disability that she ceased working. (Tr. 34).

The ALJ committed much space in his decision to reviewing the expert opinion evidence. (Tr. 34-35). He determined that "great weight" should be accorded to the state agency experts' opinions. Dr Klyop, a non-examining physician, stated that plaintiff's reports of "inability to stand or sit for long due to pain . . . are mostly credible and supported by [a] long [history] of multiple surgeries and [observation] notes . . . ." (Tr. 579). Nevertheless, his physical RFC evaluation stated that plaintiff is capable of performing a limited range of sedentary work. He based his opinion on plaintiff's strength, ability to walk without an aid, and ability to drive. (Tr. 572-581).

Dr. Haskins, a non-examining psychiatric expert, completed a mental RFC, finding plaintiff to have only mild to moderate limitations in some categories and capable of completely moderately complex tasks. (Tr. 556-557). Dr. Haskins believed plaintiff could work in a position that was not fast paced, lacked strict production requirements, and in which she did not

6

deal with the public. (Tr. 558). While Dr. Haskins found plaintiff's claims to be "mostly credible and supported by objective evidence," she did not believe her mental problems were so intense as to be disabling. *Id.*

Another state agency psychiatric expert, Dr. Nelson, provided an opinion following a consultation with plaintiff. (Tr. 535-541). While he diagnosed plaintiff as having major depression and PTSD, he found her to have merely moderate symptoms and believed plaintiff could work under limitations similar to those stated by Dr. Haskins. *Id.*

The ALJ determined that these three state agency experts' opinions were consistent with the medical evidence in the record and of particular importance in reaching his decision. (Tr. 34). He also gave some weight to the opinion of Dr. Deardorff, another state agency expert, who provided a psychological consultative evaluation that was generally consistent with the other expert opinions, though he found plaintiff to be more limited. (Tr. 34, 582-587). The ALJ gave Dr. Deardorff's opinion less weight than the others' because he found the objective evidence to be more in line with theirs than his more severe assessment. (Tr. 34).

In contrast, the ALJ did not give significant weight to the opinions of plaintiff's treating physicians, Dr. Lester and Dr. Weech. (Tr. 35). Dr. Lester provided a physical RFC assessment that found plaintiff to be substantially more limited than Dr. Klyop's assessment. (Tr. 733-736). The ALJ noted several discrepancies between Dr. Lester's opinion and her treatment records, ultimately finding her RFC assessment to be based on a single consultation and plaintiff's subjective complaints on that day, rather than the medical evidence as a whole. (Tr. 34-35). Dr. Weech provided a mental RFC that was much more restrictive than the state agency experts'. (Tr. 738-741). Dr. Weech found that plaintiff had multiple "no useful ability to function"

7

limitations, despite significant evidence in the record to the contrary, including Dr. Weech's own treatment notes.

After establishing plaintiff's RFC, the ALJ sought the vocational expert's opinion regarding the existence of jobs in the national economy which plaintiff could perform. (Tr. 36). The vocational expert testified that plaintiff could perform a number of jobs, including that of an inspector, production table worker, addressor, packer, and machine operator. (Tr. 37, 81-85). As a result, the ALJ determined that plaintiff was not disabled and did not qualify for either SSI or DIB. (Tr. 37).

### A.

In her first assignment of error, plaintiff argues that the ALJ did not consider all of plaintiff's impairments and accompanying limitations, as required by 20 CFR §§ 404.1520-1523 and 416.920-923. Doc. 16 at 12. Specifically, plaintiff asserts that the ALJ did not properly consider plaintiff's club feet and severe degenerative changes to her knees. Doc. 16 at 12. She argues: "The decision merely mentioned almost in passing, Plaintiff's history of club foot and 21 surgeries, but it did not discuss her continuing problems with club feet." *Id*. Plaintiff underscores the ALJ's statement that there was "no evidence of an inability to ambulate effectively," despite significant evidence regarding her troubles walking, including emergency room visits due to tripping and/or falling. *Id*. at 12-13 Plaintiff also argues that the state agency consultative physicians' reports downplayed the severity of her foot problems, particularly when compared to those of her treating physicians. *Id* at 13.

It is clear, however, that the ALJ gave significant consideration to plaintiff's foot and knee problems. He found both to be severe impairments, cited her history of surgeries, and devised an RFC limiting plaintiff to a restricted version of sedentary work in order to account for

8

her significant problems in these areas. (Tr. 28-29, 35). The ALJ supported his assessment with medical record evidence and expert opinion. Furthermore, as defendant points out, plaintiff misinterpreted and took out of context the ALJ's statement regarding her ability to ambulate. The ALJ's statement was made in reference to Listing 1.02, which defines "ineffective ambulation" as, essentially, requiring an aid. Plaintiff admittedly does not use an aid to walk, which is all the statement was meant to convey. Doc. 22 at 4-5. In short, the ALJ properly considered and assessed plaintiff's clubbed feet and degenerative knees and formulated an RFC that, based on substantial evidence, adequately accounted for their impact on plaintiff's ability to work. As a result, plaintiff's first assignment of error should fail.

**B.**

In her second assignment of error plaintiff argues that the ALJ did not give proper weight to her treating physicians' opinions. Doc. 16 at 13. Case law and the Regulations require that the ALJ must give a treating physician's opinion controlling weight if it is well supported by objective evidence. 20 CFR §§ 404.1527, 416.927; *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Plaintiff faults the ALJ for giving little weight to her treating physicians' opinions while giving great weight to those of the consultative state agency physicians. Plaintiff argues that affording greater weight to the state agency psychologists' opinions was particularly improper. Whereas her treating physician's opinion was based on a lengthy treatment history, plaintiff asserted that the state agency experts' opinions were rendered early in plaintiff's mental health treatment process and were therefore based on scant record evidence. Doc. 22 at 14. She also alleges that the ALJ did not adequately assess Dr. Deardorff's opinion, which found plaintiff to be more limited than the other experts'. *Id.* at 15.

9

Despite plaintiff's protestations, the ALJ did properly assess the opinion evidence in making his decision. The ALJ is to consider several factors in determining the weight to give to a treating physician's opinion, including: "the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." 20 CFR §§ 404.1527, 416.927. The ALJ also must clearly articulate the reasons behind the weight given to an expert opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In this case, the ALJ followed both dictates. In discounting Dr. Weech's opinion, the ALJ contrasted his dire assessment with the record evidence attesting to plaintiff's ability to adequately function, as well as with Dr. Weech's own treatment notes, which revealed her mental limitations to be not disabling. (Tr. 35). In discounting Dr. Lester's opinion, the ALJ noted the infrequency of examination and the discrepancy between the record evidence and Dr. Lester's statements. (Tr. 34-35). The ALJ satisfactorily assessed the treating physicians' opinions and clearly laid out his reasons, supported by the record, for giving them little weight.

With regard to Dr. Deardorff's opinion, the ALJ's assessment was sufficient. He noted that Dr. Deardorff considered plaintiff to be more limited than did Dr. Haskins, yet he believed Dr. Deardorff's opinion deserved only "some weight" because Dr. Haskins' formulation was more consistent with the medical evidence, which he explained in assessing Dr. Haskin's opinion. (Tr. 34). This was entirely proper. As such, plaintiff's second assignment of error should fail.

10

**IV.**

.   For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1.  The ALJ's non-disability finding be **AFFIRMED**.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived.  Fed. R. Civ. P. 72(b)(2); *see also U.S. v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985).  A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)).  Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal.  *Howard*, 932 F.2d at 509.  A party may respond to another party's objections within fourteen days of being served with a copy of those objections.  Fed. R. Civ. P. 72(b)(2).

This, the 19th day of August, 2013,           s/ J. Gregory Wehrman
                                              J. Gregory Wehrman
                                              United States Magistrate Judge